All right, we'll go on to case number two, which is number 15-2083 Wheatley v. Factory Card and Party Outlet. And good morning Mr. Baker. Good morning. May it please the court, Mr. Wright, my name is John Baker and I represent the plaintiff in this case, Lora Wheatley. We are here today asking that this court reverse a grant of summary judgment that was entered in favor of the Factory Card and Party Outlet. Just by way of a brief introduction, Ms. Wheatley was formerly employed by Factory Card and Party Outlet and for approximately 10 years had worked as the manager of one of its retail stores. She was injured and off of work. The injury was unrelated to work, but it was an injury to her foot. She was off of work as her FMLA leave expired. There was some dispute about what happened when she came back. This court, of course, has to accept Ms. Wheatley's version of those disputed facts, but I think it's important to note there are no facts in the record offered by the defendants. The defendants have not provided any affidavit or deposition testimony of the individuals who were involved in the decision-making process. So that makes Ms. Wheatley's facts not only mandatory to follow, but also undisputed in this particular case. Well, now, you've argued in the briefs that Dr. Fleishley's statements should be excluded from the record entirely, but absent that, isn't Ms. Wheatley left only with the release from Dr. Seneca allowing her to return to work on July 6th with no restriction? And wouldn't that indicate that as of July 6th, there was no disability at all, and her failure to return on that date would justify termination? Well, I don't believe that particular issue was argued before to the District Court, but let me address that particular question, Judge Rovner. And this gets back to, I guess, the underlying question of whether it is necessary that there be an expert witness. This Court has repeatedly held in determining whether an individual suffers from a disability. Under the Americans with Disabilities Act, expert testimony is not mandated. It may be used, but there's no obligation that a plaintiff has to use it. What must be offered is admissible evidence. That's what has to be offered. So, for example, one of the cases that we cite, the Sears v. EEOC case, that case dealt with the testimony of an individual who explained their physical limitations. But you see, the problem is that absent Dr. Fleischle's statements, she has no medical evidence of a disability at all. Well, I disagree with that, Judge Rovner. She has her testimony, and that is fine. This Court has ruled repeatedly that that is fine. A plaintiff, on their own testimony, can establish that they are disabled under the Americans with Disabilities Act. So they don't need to fall back on the expert testimony of a doctor. The question is whether there's evidence from which a jury could reasonably conclude that the person suffers from a disability. Now, under- Well, here's, I'm afraid, the way I think I see it, although, of course, I want to hear everything you have to say. It seems to me that Dr. Fleischle's opinion was necessary, both to establish that she continued to have medical restrictions on July 11th, and thus could not return to work without accommodation, and to identify that the accommodation of an immobilizing boot would allow her to return. Her testimony then could have been relevant to determine what the job actually entailed, and her ability to meet those requirements. But absent the medical evidence, her testimony is insufficient, because she can't assess the medical limitations on her activities, otherwise, you know, everyone would be coming in and saying, I can't do this. No, I don't have a doctor that says I can't do this, but I can't do this. Well, Judge Rovner, I respectfully disagree. And I think that this Court's precedent establishes that you do not need medical evidence in the form of a doctor's statement to establish that you are disabled. This Court has repeatedly allowed plaintiffs to come forward and outline what the nature of their disabilities are. And we cite to one of those cases in here, I think it's the EEOC versus Sears Roebuck, and it says, a reasonable jury could conclude, based on this evidence and its own life experience, that was the testimony of the particular plaintiff, that her severe difficulty in walking the equivalent of one city block was a substantial limitation compared to the walking most people do daily. And so what you have is you have a plaintiff's testimony explaining how it is that they are disabled. And a jury is allowed to... But why isn't her affidavit here really just a bare conclusion and not competent testimony supported by personal observation? Judge Shaw, I'm sorry, did you ask why is it not? Why is it not just a bare conclusion that she's offering in her affidavit? Well, this Court, of course, has routinely used these terms of this is a bare conclusion and self-serving affidavits. Well, self-serving affidavits, I think, this Court has also explained, are not admissible when they are not based upon admissible evidence. In this particular case, Laura Wheatley's affidavit contains tremendous amounts of admissible evidence. It's almost all admissible. She talks about what she was able to do, what her physical abilities were. She talked about when it was that she got the boot, which was two months before she sought to come back to work. She talked about what it was that she was able to do with the boot, how she was... Well, her affidavit states that as of July 1st, she was able to stand for a couple of hours at a time with a boot, but was not able to walk and stand for eight continuous hours. And the amount of time that she was able to walk was limited, even without considering the testimony of the doctors. What in that affidavit indicates that she could sit and stand for the eight-hour shifts she would require? Well, I think that's exactly what she says. Her job did not require her. She was the store manager. Her job did not require her, and the job description is in the record. But the job description did not require her to stand for eight hours. What she couldn't do was stand for eight hours. But her testimony, and I think she explains it in her affidavit, was that yes, she was able to stand for periods of time, and then she would need to sit down. She was not able to stand. The only evidence that we have from Factory Card and Party Outlet anywhere, and it's not even a thing that they've offered, was that the problem was she was not able to climb a ladder with the boot. With the immobilizing boot, she was not able to climb a ladder. However, we believe there's nothing in her job description that requires her to climb a ladder. There is nothing in any testimony that has been offered by Factory Card and Party Outlet that would require her to climb a ladder. And she testified that she would climb a ladder for restocking shelves maybe four or five times on a week. Maybe in a given week. What she explained in her testimony was that if it was necessary, she could have had one of her associates go ahead and climb that ladder. That was the only limitation that she had. She explained that to them when she wanted to come back. The only concern that they had in her coming back was the fact that her boot would not allow her to climb the ladder. Now, I would also note, it is incumbent upon the employer to engage in a meaningful interaction with the plaintiff about a requested reasonable accommodation. All they said was, unless you're 100% able to do everything, you're not coming back. That is not... So if she were qualified to perform the essential functions with the accommodation of a boot, then she was not entitled to the disability payments from Aetna. Is that right or wrong? That is correct. And I think that that bears some explanation, Judge Shaw. I mean, what you have to understand, what happened here was she was told she was not allowed to come back with the boot. The Aetna disability application questions, is somebody capable of performing their job duties? Given that Factory Card and Party Outlet had said, you can't perform your job duties, she was identified as disabled based upon their determination that she could not perform her job duties. The question in whether she's disabled, and the Supreme Court has addressed this in a number of cases, sort of an equitable estoppel doctrine, and they're different issues. Whether she was able to work, once it was determined she was not able to work, and that determination was reached by the employer. At that point, they said, you are physically not able to work, so she was entitled to receive disability benefits. She disagreed with that. She believed that she could work with a boot, but they had already denied that before it was that that particular document was signed off on, I believe it was July 8th by Dr. Fleshley. There are a couple of things that I would like to point out, and I think that the critical decision from this court that the district court relied upon was this Baseth or Baseth decision, I think a 2000 case out of this court. The district court's reading of that particular decision reached to the conclusion that the Baseth holding is supported by the fact that in most cases, and certainly in Wheatley's case, the question of whether a person can perform a job function with a reasonable accommodation is an inherently medical question which must be answered by expert testimony. That is not what the Baseth court says. That is not what that decision holds. This court has never held that. What the Baseth court said was the testimony that was offered, there was no evidence. There was no evidence offered. It says as an example they could use would be medical testimony. This court offered that as a particular example. It has never required it. I would also say that when I was preparing for this case, there was another case that came out. When I was preparing for it today, there was another case I discovered. I did not brief that, but I will submit a letter to the court to outline that pursuant to this court's rules on submitting additional authority because I do believe it is relevant. I see that I think I am getting into my rebuttal time. I will reserve the balance of my time. I certainly thank the court for allowing me to be here today. We would ask that this court reverse the grant of summary judgment and remand this case for a trial. Thank you. Thank you very much. Good morning, Mr. Wright. Good morning, Judge. May it please the court, Mr. Baker. My name is Dan Wright. I represent Factory Card and Party Outlet. I will spare the court covering the same issues that were covered in Mr. Baker's argument. I will just try to focus in like a laser on the issues I see that are really most relevant for the court today. I think that is distinguishing between two elements of the ADA Claim 1, being there is a disability. I think the case cited by Appellant's Counsel, the EEOC case, is directly relevant to the common sense testimony that could be established without expert testimony. That is what this court has repeatedly held in respect to that element. The element that the district court was talking about and upon which the district court entered summary judgment is an entirely separate element, which is the qualified individual element. That, in fact, the court has repeatedly, at least implicitly, held in Willmert, Baseth, and the Weigel decision, is an inherently medical issue that requires expert testimony. Why is it inherently medical? Why can't someone who personally experiences what a job entails and has personal knowledge of what their own functional capacity is be able to say, I can do this, but I can't do that? Why isn't that perfectly competent and admissible testimony? Well, first I would say, Judge Shaw, that the reason primarily is because this court has held otherwise previously. But I think the fundamental reason that it did hold that is because from a policy perspective, medical testimony is beyond the comprehension of me as a layperson. I'm certainly capable of testifying to what I'm able to do around the house, and that's on the disability issue. But there was a medical reason why she was taken off work, and that was reflected in the attending physician's statement. She was off work from July 7th through August 15th for a medical reason, requiring a medical accommodation, a medical boot. And for those reasons, it requires medical testimony that is beyond the scope of what she could testify to. But how is it different for an individual saying, here's what I can do around the house, which you just said is appropriate testimony. How is that any different from an individual saying, I could, with a boot on, walk around the store, perform the functions that I was expected to perform as a store manager, and I know those functions because I've done them every day of my life while employed, and I know what I can do with a boot because I wore the boot for a few weeks. Why isn't that exactly the same kind of testimony on the disability front that the court has said is admissible from a non-medical person? Mad Fientist. Understood, Judge. In some respects, it is the same in that she can certainly testify as to what she believes based on her personal knowledge that she's able to do and that she has done around the job. However, there was a medical doctor who made a medical determination that she required a medical accommodation to perform the job. And so in order for her to return to work, an employer is entitled to rely upon medical testimony to release her, to make sure that they wouldn't be subject to further liability by allowing her to come back to work with an accommodation in respect to which they have no assurance medically that she's, in fact, able to come back to work. And I think that's why this court has previously required something beyond the bare assertion of the plaintiff, and that's exactly what we have here. Plaintiff's affidavit is just her own testimony, and we're not talking about the disability issue. It's totally separate and should be considered as such. So to distinguish between the two. Is your position that she was able to work on July 11th without restriction, as Dr. Seneca indicated, or that she was not able to fulfill the duties of her job even with accommodation on July 11th because she needed an immobilizing boot and couldn't use a ladder while doing so? Well, the issue of the ladder and what was said during this telephone conversation that would have been a factual issue at trial was not the subject of the trial court's decision. And in fact, the Card and Party Outlet's position in respect to what she could and couldn't do wasn't the subject of the lower court's decision either. It certainly would have been a disputed fact at trial, however, based upon the motion briefing on the motions in Lemonade in respect to Dr. Fleischle not being disclosed as an expert, we never really got to that issue. So there was no evidence that that was a requirement, climbing up the ladder, other than her statement in her affidavit? There was no evidence in the record. There would have been evidence at trial from our disclosed expert witnesses contradicting the discussion about the ladder issue. They submitted to the court that we anticipated they would testify that that discussion didn't occur in the manner in which plaintiff accounted it in her affidavit. Is there any reason that the store manager, as opposed to an employee, had to be the one to use the ladder on the occasions when such use was necessary? Judge, I think the fact in respect to the ladder was something that was inserted into the case by the plaintiff and would have been disputed at trial by a factory card and party outlet. So are you saying it's a red herring? What are you saying? I think it was a fact that would have been disputed at trial that was not the basis for summary judgment and so isn't part of the issues on appeal, but we certainly didn't concede and wouldn't have conceded at trial that the ladder was any requirement or that it was asserted as a basis for her not to return to work. I think the testimony would have been that they had a full disability attending physician statement saying she was incapable of minimal activity completely off work during this period. And so they, it was also in the record they asked her for a certification from a physician that she was able to return to work. And based upon this, her account of this conversation that she says that she had with people from factory card and party outlet, it kind of went radio silence and didn't return to work, of course, as the court pointed out. Even if the attending physician statement were inadmissible, and we, of course, disagree with that, we're left with a full release and no coming back to work. And under the Basden decision, one of the essential elements of performing your job is, of course, appearing for work. So in either situation, although the issue of just relying upon the Dr. Seneca's release wasn't before the court, wasn't considered by the court, in either event, plaintiff's claims fail. Well, I want to talk to you about the Bass's case and your interpretation of it because it does require evidence to substantiate a claim that a proposed accommodation will enable a plaintiff to perform essential job functions. But it doesn't require medical documentation. It simply suggests that as one means of substantiating the claim, right? That is correct, Judge. I would say that there is not a- And there's a little distinction too because in that case, the plaintiff had not used the motorized wheelchair he had proposed to carry out his job. But here, the plaintiff knew what she could accomplish with the boot. Those are accurate distinctions factually. And I think it's accurate also to say that there's not a case that I was able to locate at Seventh Circuit or elsewhere that says you absolutely must have written evidence from a doctor and that you absolutely have to have medical evidence beyond the plaintiff's own testimony. However, at least- So you, I mean, doesn't your argument really go to the weight of the evidence? The trial court held in the Oregon Summer Judgment and it's consistent with our argument that this court has at least implicitly held on at least three occasions that medical evidence for establishing the element of a qualified individual before you even get to the disability issue, the interactive process, et cetera, requires some scintilla of medical evidence. So that's in the, not just in the Basis case, but the Willmar case and the Weigel case. So it's been this court's position in the past that that's, I think, something more than just the weight of the evidence, but that you can't survive summary judgment without it. Happy to answer any further questions, otherwise I'm finished. Thank you. Thank you. How much time? Three minutes? I don't know that I've ever had that long for rebuttal. I'll try not to use it all. I wanted to- No, no, no. You- No, I wanted to address one of the points- You came a long way. I wanted to address one of the points that Mr. Wright raised and that is this concern that, oh, the poor employer, what are we to do? We have to, we have an employee who's coming back to work and we don't know if they're healthy, we don't know if they can perform the job. It can subject us to potential liability. Well, both the Family Medical Leave Act and the Americans with Disabilities Act both recognize that concern. Both of them allow an employer to request that an employee submit to an independent medical evaluation to make that determination. So the employer does have an option on how to handle that particular concern. The real problem in this case was the breakdown in the discussions. Laura Wheatley, she doesn't know about the Americans with Disabilities Act. She's a store manager. But what she did do was she talked to them and she told them, look, I can come back to work with a medical boot. They told her, they told her, no, you're not coming back under those terms. So why would she have gone out and gotten a documentation from her physician saying I can come back, she can come back with this medical boot? She'd already been told, no. But you know, if you are prepared to accept the fact that it might be an open question whether she could have worked out while wearing the boot and that maybe the employer would then have to submit her to a fitness for duty evaluation or ultimately fire her because it didn't work out with the boot. If you acknowledge that that is sort of an open question on this record, then doesn't that mean that she has not mustered enough evidence to defeat summary judgment? If we don't know whether the boot would have worked out, then doesn't that mean they win? No. No, the question is can a reasonable jury find that in our favor? And you know, we have the testimony. They have no testimony. They don't have testimony from anyone. You know, they don't have the affidavits from any of these people who were involved. They have nothing. They haven't procured any of that documentation. So no, it doesn't establish that. What it establishes is if an employer, and this goes back to the obligation of the employer, and this is clear from the Americans with Disabilities Act to engage in the interactive process. That requires a conversation. An employee's obligation is to notify the employer of the problem. That's exactly what she did. She talked to them. She explained the problem. At that point, the employer had an obligation to engage in the interactive process. They didn't. They said, well, too bad. If you're not 100 percent, you're not coming back. So there's a failure of the interactive process. So to place the blame on her and to say, well, she doesn't have enough evidence, that's preposterous. What we do now is we say, well, six years later you need to go back and gather the evidence. That's not fair. What is fair is for her to come in and say, look, I did this. I know what I was able to do. I know what my job was because I did it for 10 years. I know what I was physically capable of doing because I had been in a boot for two months prior to this. I know the only thing I was limited in doing was walking up and down that ladder. And I knew based on my years of doing that job that that was a minor detail to my job. And so the problem here is they have failed to present any alternative evidence. And that means that this case should be decided by a jury through a trial and not by a judge on summary judgment. Again, we ask the court to reverse the decision. I thank the court very much for its time. Thank you. Thank you very much. Thanks to all parties and the case, like all the other cases, will be taken under advisement. Thank you very much.